# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DANNY HORSLEY,

        Petitioner,        :        Case No. 1:14-cv-504

  - vs -                           District Judge Susan J. Dlott
                                   Magistrate Judge Michael R. Merz

TIMOTHY B. BUCHANAN, Warden,
  Noble Correctional Institution,

                                   :
        Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the Petition (Doc. No. 1), the state court record and Return of Writ (Doc. Nos. 8, 9), and Petitioner's Reply (Doc. No. 10). The reference in the case has been transferred to the undersigned to help balance the workload among Western Division Magistrate Judges.

With the assistance of counsel, Horsley pleads the following grounds for relief:

> **Ground One:** The State Courts Reached Decisions that were Contrary to, or Unreasonable Applications of, U.S. Supreme Court Case Law to Find that Mr. Horsley did not have an Expectation of Privacy in the Vehicle.
>
> **Supporting Facts:** The record shows that the state affirmatively conceded that Mr. Horsley had standing by affirmatively asserting that he had a possessory interest in the car and drugs. At the hearing, Mr. Horsley submitted that it was the state that alleged he had a reasonable expectation of privacy in the discovered drugs by charging him with possession of those drugs. Mr. Horsley noted that, if the state were willing to admit that he did not have a possessory interest in the car and drugs, no need would exist to go forward with the suppression hearing. In response, the state did not

1

take Mr. Horsley up on the offer. Instead, the state suggested that, if Mr. Horsley would admit he had a possessory interest in both the car and the drugs, it would settle the question as to standing, and the suppression hearing could proceed. In short, based upon the parties' stipulation, the trial court determined that Mr. Horsley had an expectation of privacy in the car and, for that reason, found that he had standing. In other words, the trial court found that Mr. Horsley had an expectation of privacy in the car.

**Ground Two:**  The State Courts Reached Decisions that were Contrary to, or Unreasonable Applications of, U.S. Supreme Court Case Law to Apply the Inevitable Discovery Doctrine when the Illegal Extension of the Investigation Led to the Grounds to Believe that Alternative Legal Investigative Measures Should be Employed.

**Supporting Facts:** Only through the illegal delay in waiting to cite the parked rental car did the state develope [sic] a connection between the parked car and a co-defendant and, therefore, any factual grounds to believe the parked rental car should be subject to inspection by a drug-sniffing canine. One officer had already written the parking citation when a second officer arrived for the express purpose of confronting someone who might have been driving it.  By the time the second officer arrived, the state had already illegally prolonged the investigation of the parked vehicle. The officer claimed that it wanted a co-defendant's identification in order to the parking violation investigation. But that was not needed. Only after that delay did the officers pat down a co-defendant and arrive at the scene with the drug-sniffing canine. Only then did the state decide to execute a drug-sniff on the rental car, and only then did the state develop probable cause to search the car. In short, the officers had the factual grounds to believe that a drug-sniff of the car might be fruitful only after the illegally-prolonged search.  Accordingly, it was not inevitable that the drugs would have been located. It was as a result of the illegally-prolonged investigation of the parked rental car that led the state to the drugs.

(Petition, Doc. No. 1.)

**Procedural History**

A Scioto County grand jury indicted Horsley on two counts of trafficking in drugs, two counts of possession of drugs, possession of criminal tools, conspiracy to traffic in drugs, and tampering with evidence. Horsley challenged the seizure of evidence from his rented car by a motion to suppress. Having lost that motion, Horsley pled no contest to one count of trafficking in drugs, one count of possession of drugs, and one count of tampering with evidence, for which he received an aggregate sentence of ten years imprisonment. He appealed to the Fourth District Court of Appeals, raising as his single assignment of error that the trial court erred in denying the motion to suppress. Unpersuaded, the Fourth District affirmed. *State v. Horsley,* 2013-Ohio-901, 2013 Ohio App. LEXIS 793 (4th Dist. Feb. 8, 2013).[1] The Ohio Supreme Court declines to exercise jurisdiction over a subsequent appeal. *State v. Horsley*, 135 Ohio St. 3d 1471 (2013). Horsley then filed this habeas corpus case.

## Analysis

Both of Petitioner's Grounds for Relief assert that the evidence used to convict him was seized in violation of his rights under the Fourth Amendment. As he notes, Respondent does not argue the merits of his claims, but asserts that merit consideration of them in this Court is barred by *Stone v. Powell,* 428 U.S. 465 (1976). The Court in *Stone* held that federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized

---

[1] References hereinafter to *State v. Horsley, supra,* are to this decision.

evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

In *Good v. Berghuis*, 729 F.3d 636 (6th Cir. 2013), the Sixth Circuit confronted the assertion that a habeas petitioner was entitled to consideration of his Fourth Amendment claim on the merits because denial of an evidentiary hearing in the trial court deprived him of the opportunity for full and fair consideration of his Fourth Amendment claims. The Court rejected that argument and followed its prior conclusion that "opportunity means opportunity . . . the state court need do no more than 'take cognizance of the constitutional claim and render a decision in light thereof." *Id.* at 638, *quoting Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977).

Horsley's claim is not that he did not receive an evidentiary hearing or that the trial judge

did not render a decision on his Fourth Amendment claims. Instead, he claims he "was precluded from having the state's corrective procedures actually address the Fourth Amendment arguments he raised." (Reply, Doc. No. 10, PageID 377.) His argument is that the Fourth District did not decide the claims he actually raised. *Id.* at PageID 377-79.

*Good* makes this approach unavailable. The Sixth Circuit there held:

> Consistent with *Moore* and with two of the three votes in *Bradley*, we make clear that the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim. First, that is what *Powell* said: It focused on the opportunity for fair consideration presented by the state courts, not the procedure used in a given case to address the specific argument of a given defendant. In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim.
>
> Second, this approach accords with traditional federalism and comity principles—considerations that animated *Stone v. Powell* in the first instance and considerations that take center stage whenever evaluating the scope of federal habeas corpus review. See generally *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Looking into the adequacy of state opportunities to raise federal claims is a familiar exercise; hence the "adequate" in the doctrine of independent and adequate procedural grounds. See, e.g., *Lee v. Kemna,* 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002). But it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented. States are independent sovereigns, and the federal government generally speaking should respect their choices about how to adjudicate disputes.
>
> All of that explains why *Powell* tells us not to "assume that there [is] a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States." 428 U.S. at 493 n.35. We must instead presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim—resolving some motions

5

> with neither an evidentiary hearing nor an oral argument, some with an oral argument alone, some with both.
>
> Third, a different conclusion would be impractical and in the end would raise more questions than answers. It is not feasible to prescribe a uniform set of procedures for every suppression dispute. Take the type of procedure demanded in this case: an evidentiary hearing. The exclusionary rule results in "tens of thousands of contested suppression motions each year," *McDonald v. City of Chicago,* 130 S. Ct. 3020, 3047, 177 L. Ed. 2d 894 (2010) (plurality opinion), and if every one of them prompted a full evidentiary hearing the wheels of justice would jam. Nor is it reasonable to think that an evidentiary hearing is warranted in every case. In some cases, the defendant will not allege a cognizable Fourth Amendment violation. In others, an exception to the exclusionary rule, say for inevitable discovery or for a good faith search, will plainly bring the evidence in. In others, the relevant facts already may be in the record, making an evidentiary hearing unnecessary. In still others, it will be obvious that the suppression motion is frivolous, or that it was made solely for the purpose of delaying the case. Just as the Supreme Court has presumed that a state appellate court normally will have a good reason to deny an appeal summarily, see *Harrington v. Richter*, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011), so too may we presume that a state trial court often will have a good reason to deny a suppression motion summarily.
>
> Fourth, a contrary approach would collapse the hearing inquiry into the merits inquiry. The right to a hearing would turn on how strong the underlying exclusionary claim was, prompting an inquiry of the sort *Stone v. Powell* prohibited in order to determine whether *Stone v. Powell* applied. Our approach, and the majority rule, asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?

*Good*, 729 F.3d at 639-40.

Applying *Stone v. Powell* to this case, it is plain that Horsley was able to use Ohio's procedure to obtain a decision on the merits of his Fourth Amendment claims. Under *Good* this Court may not inquire further.

6

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

July 6, 2015.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).